Your honors, may it truly please the court, counsel, Brian Toter, appointed counsel, I would like to use about seven minutes on my address and reserve the rest. As to our argument, we have two arguments here. We have an argument regarding the upper departure of 15 months regarding criminal history, and we would like to rest on our briefing for that issue and focus on the issue regarding a new rule of law that has actually been established by the district court, which urges that carfentanil and feral fentanyl are not adequately addressed in the guidelines. There are no reported cases, actually in the United States, no federal cases regarding carfentanil sentencing, so in a sense this is a case of first impression. One thing that we do have here is about 100% deviation from the guideline calculation, and as this court has said before, the more the court varies, the more compelling the justifications are. As a threshold matter, I notice there's an error in the judgment in this case. In the judgment regarding count four S, under nature of the offense, it says that there was carfentanil involved in that particular mixture, but there was not in count four in that transaction. But nevertheless, the district court added 18 months even to count four, even though we're talking about furanil fentanyl, which is a fentanyl analog, which is less potent than fentanyl. So all the more reason why I am asking this court today to do a review de novo, because I don't believe that this is an abuse of discretion case regarding carfentanil, because we're talking about an application of the facts to the guidelines. So what the district court did, distilling his reasons for this, Judge Frank said that I simply can't set aside the potency issue. I looked at the potency, and so in my judgment, I must add 18 months for the serious issue. There's no presumption that the guidelines are unreasonable. The guidelines deal with carfentanil in the sense that they deal with the fentanyl analog, of which carfentanil is. There's no question about that. And the extra time that you have to do for a carfentanil, I'm sorry, a fentanyl analog is not insignificant. If Mr. Edmonds had dealt with 5.9 grams of only heroin, his sentence would have been, his guidelines would have been 24 to 30 months. If he had dealt with 5.9 grams of heroin laced with fentanyl, the guideline calculation would have been 30 to 37 months. But in this case, he dealt with 5.9 grams of fentanyl analog, and for that, the guidelines provide 41 to 51 months. So for 5.9 grams of a fentanyl analog, for 5.9 grams, you get an extra year, a whole year in prison. If this had been a kilo, you would have got six years in prison. So there is a significant increase in the penalty as a fentanyl analog. Now, what the government presents is that under Section 2D1C, the Drug Quantity Table, Note A, the entire weight of a mixture should be assigned to the controlled substance that results in the greatest offense level. There's no question about that. But this presents, with carfentanil, it presents a real anomaly. Dealer A, let's say we have a Dealer A. Dealer A deals heroin laced with carfentanil, and Dealer B deals with pure carfentanil. If both dealers had the same amount of carfentanil that they were selling, Dealer B, who's dealing in pure carfentanil, would do exponentially more time. That's not to say that there's something wrong with 2D1C, but when it's conflated with 2D1C, Note A, it just doesn't deal with real life. What that note actually does is it obviates the necessity of consuming lab work. It makes things easier. So then the government, what they conflate it with is Comment Note 6. It says that in determining the appropriate sentence, the court may also consider whether the same quantity of analog produces a greater effect on the central nervous system than the controlled substance for which it is an analog. That's true, but there's two ways to look at this. The same amount of carfentanil is 100 times more powerful than the same amount of fentanyl. But in the case at Barr here, and in similarly situated cases, these dosages are never the same quantity. The court could take judicial notice that merchants don't want to sell products that kill their customers. The amounts that you deal with with carfentanil added to heroin are always going to be substantially less, and I believe that when you talk about 2D1C regarding the same quantity of an analog and a greater effect on the central nervous system, I would ask this court to reserve that to when people are dealing with fentanyl. Fentanyl is moved back and forth just as fentanyl, and there it makes sense. Society, the second argument that Judge Frank talked about and the government talked about. So I'm sorry to interrupt, but I'm struggling a little bit with, isn't this an issue for the district court's discretion? I mean, we have previously held that district courts at sentencing can consider a variety of factors, and in essence can, even those factors that are already anticipated in the guidelines, and can fashion a sentence that's appropriate in the district court's opinion based on the facts of the case. What is it about, I'm struggling a little bit, what takes it out of the general rule here? Well, the general rule is this court, first of all, has never dealt with carfentanil. It is somewhat unusual. But secondly, we're talking about an application of the guidelines to the facts. I think the case that we cited there was USV Wells. I think this is a case where the court could look at this de novo, as opposed to strictly as an abuse of discretion. There was not much of a record developed regarding this. There were mentions of carfentanil being 100 times more powerful than fentanyl. There was one where it was 200 times more. And we know that a lot of these analogs of fentanyl are less powerful than fentanyl. So I am asking this court to look at this de novo, and come up with some sort of a guideline that will work, and have that put together with more research by the court below. Well, let me ask Judge Kobus' question a little bit differently. When we're analyzing the case, and we're sitting down and try to decide analytically, how do we view the case? What steps do we go through in considering your contentions? Are you contending that there was procedural error by the district court, or is at base your argument essentially that the sentence is too long? Neither. Neither one of those. I'm arguing that what the court did not do was take the – well, I'm not sure. That's a good question, Judge. I don't quite understand which one of those it is. Well, you're not contending that a guideline was – provision was incorrectly applied, correct? I mean, you're not contending that the sentencing guideline range was incorrectly calculated, correct? I am not. No, I'm not. It wasn't – You take issue with what the district court did after the guideline range was calculated, correct? Yes. You say that the court excessively viewed the identity of this substance and its involvement in the case, and took that into account in reaching the ultimate sentence and viewed it as an excessively aggravating circumstance or factor. I'm saying the court did not fully explain how it got to that. It talked about potency, but it didn't talk about the relationship between potency and the amount of time. I mean, the court could have said, well, carfentanil is 100 times more powerful. Why didn't it give 24 months? Why didn't it give 12 months? We have no rule to go on. Okay, so is it a contention then that the district court did not adequately explain? Absolutely. That is the gravamen of our argument. All right. Thank you. Thank you very much. All right. Mr. Saxena. Thank you, Your Honor. Dan, may it please the court, counsel. Good morning, Your Honors. Your Honors, the court should affirm the district court's decisions to both vary upwards based on the potency of carfentanil and furanofentanil, and also to depart upwards on the basis of the defendant's underrepresented criminal history. To spend the majority of my time on the same issue that opposing counsel spent his time on, the district court acted well within its discretion to vary upwards by only 18 months based on uncontested evidence at sentencing that carfentanil is as much as 200 times more potent than fentanyl and that it had resulted, that it had caused more than 10 documented overdose deaths in Hennepin County over just a four-month period in 2017. I want to highlight, as I think both of Your Honors were questioning opposing counsel about, that the defense conceded at sentencing that carfentanil is not only between 100 and 200 times more potent than fentanyl, but also that it poses unique dangers because of its extreme potency and that it has been linked to multiple overdose deaths both in the district of Minnesota and nationally. And so there was no contrary evidence presented to the probation office or to the court at sentencing that would detract from that factual finding. And on review, the proper standard for any factual issues that may be implicit in defendant's argument is plain error. It is not a de novo review of the potency of carfentanil or the relative impact of carfentanil versus fentanyl. It would be a plain error review standard. Plain error of what? Maybe I'm missing your point there. So you say that, you know, usually we look at plain error when the appellant before the district court doesn't make his or her record, doesn't object to an action of the district court. And so then on review we say, well, we view this under a plain error standard. So why do you say it's a plain error standard? And let me try to clarify, Your Honor. I think what I was hearing opposing counsel tell you during his presentation is that he feels that there was an insufficient factual record to support the reasoning that the district court provided for its upward variance. And an inadequate explanation I think was one of the last things counsel stated. Yes, and I will get to the inadequate explanation argument. But just as a preliminary matter, I want to stress that there was no disagreement between the two parties in terms of the factual record about carfentanil and that the PSR was adopted by the district court without objection from the defense. And so to the extent that the defense is making factual arguments, and perhaps he's not, those arguments should be reviewed on plain error. Now, turning to the question of whether there was – well, first of all, if I could just spend one quick minute on the issue of whether there was procedural error. I did not read the defendant's brief to allege any procedural error. I also think the sentencing transcript makes very clear that the court correctly calculated the guidelines and that it considered the guidelines as part of the mix of factors that led to its ultimate sentence. And now turning to the issue of whether the court adequately explained its reasons, I think within the colloquy that the court gave justifying its upward variance, it basically mentioned two factors. One was potency, but the other was societal impact. And both of those were sufficient to explain the district court's discretionary decision to disagree with the guidelines range and to make the determination that the guidelines don't themselves arrive at a sentence that is sufficient but not greater than necessary to meet all of the goals of sentencing. And I think the best case on this issue is Kimbrough, a case that was decided the same day as Gaul when the Supreme Court was addressing this issue in connection to cocaine base and cocaine powder. And what Justice Ginsburg stated in Kimbrough is that the district court does not have to establish with mathematical certainty why a particular controlled substance should be sentenced at a level higher or lower than the advisory guidelines range. The only thing that reviewing courts are going to look at in determining whether the court is acting within its discretion in disagreeing with the guidelines on issues such as potency and societal impact is whether the reasons and the ultimate sentence are substantially reasonable. And so, you know, Kimbrough, this case is sort of a reverse of what we normally see when district courts disagree with the drug quantity guidelines or the drug quantity table. Normally we're here because defendants are arguing that marijuana should be treated differently than the guidelines state or that methamphetamine because most methamphetamine is so pure that methamphetamine should be treated differently. And just as this court has held that district courts can vary downwards on the basis of new scientific information or new societal data about the impact of particular controlled substances, the court should also affirm the district court's discretion here in trying to take account of new scientific data and very new information about the societal impact of these extremely potent fentanyl analogs. And so the district court gave very significant reasons and well-explained reasons for why in this circumstance where the guidelines treat what is effectively thousands of fentanyl analogs as the same. They treat all fentanyl analogs as four times more serious than fentanyl itself where there is uncontested evidence that fentanyl analogs have caused numerous overdose deaths and are at least 100 times more potent than fentanyl itself, that that is itself empirical evidence that the guidelines have not sufficiently taken into account the societal impact of the drug. I did want to address briefly the arguments that defense counsel is making about the relative purity of carfentanil within a poly substance, within a poly-controlled substance blend. And I think both sides agree that the guidelines treat the entire mixture, even if it contains multiple controlled substances, as though it is made up 100% of the most serious substance. But I think where defense counsel is going too far is by claiming that in this case there was any evidence that there were only trace amounts of carfentanil within these poly-substance blends. The labs in this case did not determine the purity of any of the substances within any of the mixtures, and that's for good reason because the guidelines don't take into account the purity of virtually any controlled substance within any blend, whether they contain more than one controlled substance or not, with the notable exception of methamphetamine, where purity is what drives the guidelines calculation. And so here there's no evidence in the record that carfentanil was only a trace amount and that heroin made up the larger amount of these samples. And in fact, as I think defense counsel noted, it is becoming a much greater trend for drug users to seek out fentanyl itself. And because these synthetic opiates are typically being manufactured abroad and shipped here in large quantities, and because of their extreme potency, they are oftentimes the driving active ingredient in drug mixtures. That is actually more likely to be the case in these drug mixtures as well, that the primary component of these poly-substance blends is carfentanil. Another area that I believe the defendant is arguing about is that we should try to focus on the dosage. And again, with carfentanil, that's another good reason why an upward variance is supported here. That's because it is such a uniquely potent substance, the courts should not assume that someone on the street who is engaging in street-level drug dealing is sophisticated enough or has the equipment necessary to dose carfentanil in a way that is safe. And that's why we see so many different overdoses. That's why the entire amount should be treated as though it is all carfentanil. Your Honor, just very briefly on the underrepresented criminal history argument, I will also effectively rest on the briefing on that issue. I did just want to note that the court, in addition to noting that there is assaultive conduct that did not result in criminal history points, it also mentioned that there were numerous violations of supervised release. And I don't believe the defendant is contesting that there had been multiple prior violations of supervised release, and those would have supported the upward departure. And then finally, Your Honors, the court can also affirm the upward departure based on underrepresented criminal history, based on other facts in the record. Here the defendant had 40 criminal history points, more than triple the number that would have resulted in criminal history category 6. Let me ask you a question, just to clarify this. You know, sometimes it's confusing when we talk in terms of variance and departure. Sometimes they're used interchangeably. This was, on the underrepresentation, this was brought up after the guideline range was calculated, correct? Correct. And so the government requested the increased sentence based on a guideline provision which permits that? Correct, Your Honor. The upward departure was based on sentencing guideline section 4A1.3A, which provides for upward departures based on underrepresented criminal history. All right. Thank you, Your Honors. How much time does Mr. Toder have? No time, Your Honor. All right. Mr. Toder, take a minute and conclude. I think we understand your argument, but take a minute if you'd like and give us your last, the last thought you'd like us to take away from the argument, perhaps. By the way, before you begin, I want to thank you on behalf of the court for your service in the case under the CJA. Thank you. My last minute, I just want to point out to the court that there had to be, we are talking about trace elements here. Carfentanil is so unusual. Two milligrams of fentanyl is deadly, but 20 micrograms of carfentanil is deadly. You can't even see visually 20 micrograms of carfentanil. There has to be trace amounts, and that's why this is unusual and needs something developed. Also, as far as plain error goes, we had no opportunity to object. This came after. And secondly, regarding no objection to a potency or something that we have waived, we conceded, as anyone would have to concede, that carfentanil is extremely potent. What we do not concede and what we need guidance for, maybe some expert advice, is the relationship between potency and the actual guidelines. How much more time do you get? Because one analog is more potent than the other. In infernal fentanyl, should we be giving someone less time than what the guidelines provide because feral fentanyl is less potent? This is the gist of our argument. We want some kind of a rule out of there because right now there is no rule on carfentanil in this case. Thank you. Thank you very much. Thank you for your arguments, counsel. Case is submitted. Does that conclude our calendar for this morning? Yes, Your Honor. All right. Thank you very much. And the court will be in recess until further call.